UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,                    Case No. 22-cr-20070

     v.                             Hon. Gershwin A. Drain
                                       Magistrate Judge Anthony P. Patti

CORNELIUS MANNS,

      Defendant.
_____/

**GOVERNMENT'S WRITTEN PROFFER IN SUPPORT
OF ITS REQUEST FOR DETENTION PENDING TRIAL**

The Government seeks the pretrial detention of Defendant Cornelius Manns because he poses a danger to himself and to the community. Manns has a significant criminal history, including recent involvement in several violent offenses. He's also admitted to being a purchaser and user of cocaine and was found possessing cocaine and a substance containing a mix of cocaine and fentanyl. Most significantly, law enforcement officers located four firearms in Manns's home, several of which were loaded, and any of which could have been accessed by his two minor children who were living there with him.

1

In short, no condition or combination of conditions will reasonably assure the safety of the community as required under the Bail Reform Act. The Government seeks Manns's detention pending trial.

## Facts

On February 15, 2022, a grand jury issued a one-count indictment charging Manns with possessing four firearms as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The facts that led to this indictment are an important part of the Government's proffer. Those facts derive from Manns's conduct, his criminal history as catalogued in agency reports, various police reports, and several reports of investigations.

On November 29, 2021, a Task Force Officer (TFO) at the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) reviewed shot-spotter reports for five gunshots that had been fired on November 26, 2021. The reports indicated that the shots had been fired from a residence at Faust Ave. ("the Faust Residence"). During the TFO's review of these reports, Detroit Police Department (DPD) shot-spotter units recovered two spent cartridge casings outside the Faust Residence.

The investigating TFO learned that one of the residents at the Faust Residence was Manns, a convicted felon. The TFO also learned

that Manns had been a suspect in a violent armed robbery that occurred on June 3, 2021—just a few months earlier. The facts of that robbery are harrowing and also worth briefly reviewing.

According to the incident reports from that armed robbery, a victim reported being at a gas station when a group of five unknown males started to beat him up. The victim reported being hit with hands and feet and then receiving a blow to the back of his head from an unknown object. While being hit, the victim stated that someone took $60–$120 dollars from his pocket.

Once the victim got up, the victim began to run. The victim reported that, at that point, a black male in a blue shirt started to shoot towards the victim. The victim continued running away and eventually ran into police who had responded to the scene based on the sound of gun shots. The police noticed that the victim's right eye was swollen shut and that the victim had gashes on his right forearm.

The victim told the police, "they're trying to shoot me." When the police asked the victim who was trying to shoot at him, the victim responded, "he's wearing a blue shirt." The victim then described the direction in which the black male wearing a blue shirt had fled. Officers

soon after found Manns running in that direction in a blue shirt. They then arrested Manns and found $700 cash on his person. Unfortunately, police officers were unable to recover the firearm or casings from the scene of the incident. Later, they were also unable to locate the victim, who had been hospitalized from his severe injuries. Therefore, this violent incident was never charged. While the Government cannot allege what Manns's exact involvement in this armed robbery was, the fact that Manns was present, arrested because he matched the appearance of the shooter, and found in the vicinity of the incident with cash on his person is in and of itself concerning.

On December 13, 2021, two weeks after the TFO reviewed the November 2021 shot-spotter reports, law enforcement officers obtained a search warrant to search the Faust Residence. DPD and ATF officers executed that search warrant two days later on December 15, 2021.

When agents searched the Faust residence, Manns was the sole occupant. During the search, officers recovered numerous rounds of assorted ammunition upstairs. Additionally, downstairs, they found one Smith and Wesson .38 caliber revolver under a couch cushion in the basement. They also recovered one loaded Bersa BP9cc 9mm caliber

4

semi-automatic pistol, one Smith and Wesson M&P Shield .380 caliber semi-automatic firearm, one loaded FN 503 9mm caliber pistol, and at least two plastic baggies containing white powdery substances that were suspected to be cocaine or other illicit controlled substances.

During two *Mirandized* interviews, Manns admitted to living in the home with his wife and two children (ages 13 and 6), purchasing three of the recovered firearms "off the streets," and using cocaine weekly.

Manns has at least two prior felony convictions: 1) Possession of a controlled substance less than 25 grams (MCL 333.74032A5) to which he pleaded guilty and was sentenced in March 2007, and 2) Possession of weapon by felon (MCL 750.224F) to which he pleaded guilty and was sentenced to 1 to 5 years in June 2009.

The maximum penalties for Manns's instant offense are up to 10 years imprisonment and a $250,000 fine. Without predicting Manns's sentencing exposure at this time, the Government notes that the number of firearms recovered in the home and the fact that one of the firearms was stolen will likely increase Manns's guidelines range.

5

## Argument

Manns should remain in custody pending trial so that the Government can ensure the safety of the community until he is tried. Under the Bail Reform Act, 18 U.S.C. § 3142, a defendant may be detained pending trial if a judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (quoting 18 U.S.C. § 3142(e)). "A judicial officer's finding of dangerousness must be 'supported by clear and convincing evidence.'" *Id.* (quoting 18 U.S.C. § 3142(f)(2)(b)). The burden of persuading the judicial officer of dangerousness lies with the Government. *Id.* at 946. Hence, to detain Manns pending trial, the Government must prove by clear and convincing evidence that Manns poses a danger to the community. *Id.*

In determining whether the government has met its burden of persuasion, the court must consider certain factors listed at 18 U.S.C. Section 3142(g). These factors are: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, ... a Federal crime of terrorism, or involves a minor victim or a controlled

6

substance, firearm, explosive, or destructive device; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. Section 3142(g). Here, these factors show that Manns should be detained pending trial.

**A.     The Nature and Circumstances of the Offense Charged**

Though one count, the charge against Manns is serious. It alleges that he possessed four firearms as a convicted felon. Moreover, at least two of these firearms were loaded with ammunition in the chamber, and a third had ammunition in the magazine. Further, one firearm (the FN 503 pistol) was stolen, and this same firearm had casings that matched the casings that the shot spotter units discovered outside the Faust Residence when they investigated the area.

Beyond these facts, the Smith and Wesson .38 caliber revolver was recovered under a couch cushion in the basement—not locked, concealed, or removed from the children's access. And finally, the interview with Manns indicated that he had even forgotten about the loaded Bersa, another serious concern in a home with minor children.

Congress thought it was especially significant if a charge includes "a crime of violence, ... a Federal crime of terrorism, ... or involves a ... firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1). The charge here falls within Congress's concerns. And as noted earlier, the number of firearms that Manns possessed, along with the fact that one was stolen likely increases his sentencing exposure.

**B.  The Weight of the Evidence Against Manns**

The weight of the evidence "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948 (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985) (noting that the weight of evidence against the person "deals with the factors to be considered in determining whether there are conditions which will assure the appearance of the accused and safety of the community.")).

Here, the weight of evidence of Manns's dangerousness is great. The Government already noted the number of firearms found in Manns's home, the haphazard (and thus easily accessible) way in which these firearms were stored, the fact that Manns purchased the firearms "off the streets," the fact that the FN 503's casings matched those recently

recovered outside the Faust Residence, the fact that multiple of these firearms were loaded, and the possibility that one of the firearms was used in a recent armed robbery.

The Government also noted that illicit substances, specifically bags of cocaine and cocaine laced with fentanyl were recovered in Manns's basement, and Manns' himself admitted that he used cocaine weekly. The fact that Manns—a self-admitted regular cocaine user—has four accessible firearms—at least two of which are loaded—in a house with his wife and two young children shows that Manns is dangerous.

**C.  Manns' Characteristics and Criminal History**

Cornelius Manns is 38 years old. His criminal history shows escalating criminal conduct and a history of violating release conditions. For example, after incurring a controlled substance misdemeanor in 2006, Manns incurred his first state felony charge in 2007 for possessing controlled substances. As part of his sentence for this offense, the court revoked his probation, and he was sentenced to 90 days' incarceration. The probationer's description of Mann's violation of probation from that time reflects that Manns's adjustment to probation was poor, and that Manns made little to no effort to comply with his release conditions. It

also indicates that there were outstanding warrants pending against Manns at that time. It ultimately concluded that Manns was not suitable to community supervision.

In 2009, Manns incurred a more serious felony—this time for unlawfully possessing weapons, which again seemingly led to him violating his probation conditions from his previous offense.

Most notably, in December 2017, Manns was charged, but not convicted in a very serious domestic violence case. The offense occurred in October 2017, when Redford Police responded to a 911 call and were dispatched to a residence. Upon arrival at that residence, the victim—Mann's wife—was outside with her and Manns's daughter. She told police that her husband, Manns, and she had been fighting and she wanted him to leave. The responding police officer noted that the right side of her face was swollen and very red. Though Manns's wife initially didn't want to name Manns as the person who caused her injuries, she eventually did and spoke to the responding officer about the incident.

She explained how it all began when Manns asked her for a ride home from work and she didn't respond right away. This made him upset. When she later spoke to Manns on the phone, he said that "he was going

to physically hurt her." She further explained that Manns eventually got a ride home from work, but when he came home, the two began to argue in the dining room. There, he struck her on the right side of the face 1-2 times, so she took her daughter into the bathroom to get away from him. Manns then came into the bathroom and struck her in the face several more times. She then ran into the bedroom with her daughter and locked the door. But Manns kicked a large hole in the bottom half of the door. She then got scared so she unlocked the door, at which point Manns backed her into the corner of the room and hit her on the right side of the face at least a half dozen more times. She then grabbed her two children and tried to leave the home, but Manns grabbed one of her children back, so she only left the home with her daughter, and waited for police outside. Both children witnessed this incident, and Mann's daughter corroborated her mother's account of the incident with officers.

It's an all too familiar circumstance that domestic violence victims refuse to testify or cooperate against their abusers. So too in this case. The charges were dismissed—irrespective of their merits. But it's important for this court to note that Manns's conduct was witnessed by

11

several individuals—including his children. And Police officers observed, documented, and photographed the severity of Manns's wife's injuries.

The Sixth Circuit has stated that "[a] willingness to strike loved ones offers probative evidence of a tendency to violence and dangerousness toward others." *Stone*, 608 F.3d at 953. No doubt; it's true. Manns's criminal history weighs in favor of dangerousness.

**D.     The Nature of Seriousness of the Danger to Any Person or the Community**

As noted, Manns has a history of violence, including serious domestic violence against loved ones and of violating his conditions of release. He also has a self-professed history of using controlled substances, whilst living in a home with young children. Most relevant to the charges issued in this case, Manns was found with a large number of firearms, knowing that he wasn't supposed to possess them. Viewing all of the factors together, the Government believes that no conditions of release will reasonably assure the safety of the community.

## Conclusion

Manns should be detained pending trial.

        Respectfully submitted,

        DAWN N. ISON
        United States Attorney

        /s/ Myra F. Din
        Assistant United States Attorney
        United States Attorney's Office
        Eastern District of Michigan
        211 West Fort Street, Suite 2001
        Detroit, MI 48226
        Phone: (313) 226-9653
        Email: Myra.Din@usdoj.gov

Dated: February 18, 2022